Good morning, Your Honors. My name is Howard Davis. I represent the Petitioner, Ricardo Angel. I'd like to have two or three minutes for rebuttal time. This case involves a denial of a Nicara on statutory grounds for having assisted or otherwise participated in the persecution of any person on account of one of the five grounds. The immigration judge and the board confirmed found the persecutor bar was triggered when the judge found that Mr. Angel had arrested guerrillas, handed them over to a superior officer, who then engaged in torture in the course of interrogation and that Mr. Angel was aware of the torture. She further found that the officer did this while conducting an intelligence type interrogation that these people were guerrillas and on that basis the persecution was done on account of political opinion. She also found that Mr. Angel did not rebut this by proponents of the evidence. I think my concern here, I'd like to first focus on the issue of scienter. The judge found that Mr. Angel was aware of what would befall the guerrillas when he handed them over to his superior officer. But I think that the judge overstated and mischaracterized the record because there is nothing in the record that states when it was that Mr. Angel came to be aware of what would happen to the guerrillas when he handed them over. And so the judge, there was no issue as to timing or anything like that. So in order for him to be culpable. Who had the burden on that? For the initial triggering, I would say that it was the government that had to show that he had knowledge in order for the bar to be triggered. And like I said, the judge overstated and mischaracterized the record. There was nothing there about the timing. What do you mean by there was nothing? I understood that with regard to the statement that he, whether he believed that the people were being disappeared. That was a sufficiently vague statement. But as I understood the evidence about what he knew about what his superior officer was doing, he said, the guy told me, you know, while this was going on, I thought that's what he said. That, that, I mean, if I'm referring to page 550 of the record here. And which date was that? I'm sorry? Which date of which one of the hearings, June 20th? No, this is, this is from the sworn statement. And so, you know, there's the sort of the, in the back and forth in the sworn statement, it says, did you threaten the guerrillas? No. And then how, how would the sub-lieutenant obtain information asking questions? Did the sub-lieutenant ever threaten? Yes. He threatened to kill or torture. Were the alleged guerrillas ever killed or tortured? They were tortured. Their hands were, would get mutilated, et cetera. And then how did you know that's what happened? I learned it from the sub-lieutenant. He talked about it. The problem here is, is that there's no sense of the timing. Was it, was it, was it after he had stopped? He had, is this something he'd learned about later? So this, this is the thing that concerns me, is that for the judge to then say, based on this, that he knew about it at the time that he was handing over, you know, very much overstates. One of the problems here is the judge essentially resolved all doubts against him because when he came into the hearing, he said none of this ever happened. Right. And of course, obviously to be intellectually honest here, I mean, it's, that's one of the challenges here, but I'm, but, but I'm doing this, I'm assuming I'm doing this based on the sworn, the sworn statements that, that is the testimony that he gave to the two asylum officers. And so, you know, we're, didn't really talk about all that so much. The only thing that he did, that he did confirm during his direct exam is that he was a soldier. He was in this particular battalion. There's a discussion about what it was and for two years and that, you know, he was, you know, he was forced when he would, he would, he would be in common when he was forced to. And after that, the court is correct. I mean, he pretty much disavowed all that, but, but basically I'm, I'm doing this based on the sworn statements, which is what the judge found was credible with all sworn statements. So it's based on this that I find that, you know, this whole thing about the, the scienter was, is particularly troubling. And like I said, overstated, mischaracterized the record on the part of the judge. So in that sense, so the, the, so it was error to find that the, the bar was triggered. The other issue has to do with the unaccount of. And I mean, I gather that you're agreeing that if what happened, if what happened here was what the IJ thought happened here, that that would constitute persecution. In other words, you're saying that the evidence doesn't support it, but if the IJ's conclusions as to what happened were correct, essentially, he arrested these people, he asked them a couple of questions, and he turned them over to the I understand. I mean, I don't actually have a ninth circuit case. I'm sorry. There are cases in other circuits that are very. Right. And this is why, you know, I mentioned Castaneda, etc. Here, the furthest over cases is Miranda, right. Where the guy was actually there. Right. And, and in this case, Mr. Mr. Onhell wasn't present. He didn't, he didn't, he wasn't involved in any of the harming of the people. And, you know, he, he was present in other cases. Pretty far. He was pretty distant from that. I'm sorry. He actually found the people and brought them there. Yes, he, yes, he did. And yeah, he found the people and brought them there. But the question is, is what he knew and when he knew it. OK. You had another question. The issue of on the on account of. It seemed that the the judge that that the mere fact that that by simply arresting a guerrilla sort of converted Onhell's conduct into one of political intent. And I don't think that, you know, there's there's evidence to support that doesn't have to be his intent. Well, actually, you know what this is actually I wanted to bring up and I and I and I have to admittedly, I didn't go in this particular direction. And so but it really has to do with, you know, you know, his and his intent at the I mean, if we're looking at it in a case like that of Rodriguez Mahano, which the finding of persecution requires some degree of intent on the part of the persecuted to produce the harm. Well, someone like from that, he has to have the nexus. I'm sorry. That's different from he has to have the mindset rather than knowing that somebody else does. Well, it's it's it's related. I mean, I mean, on the one hand, because let me just ask you something. Is it that still moves the question down one piece further? There was a civil war going on and they were having battles with these groups. That's right. They were also then arresting these guerrillas and torturing them. Let's leave him out of it for the moment. OK. Is that torture? Persecution under the statute, I gather it is because it went beyond sort of ordinary war or what? Torture. That seems to me to be the, you know, the key question, i.e., you know, if you treat your enemies in a war extremely badly, I mean, it's against the international norms. Is it persecution under a statute? I think maybe it is. I think there may be case law, but I don't know. I mean, I know in a course in before like cases like Perusimova, I mean, there were there would be there were cases in which, you know, is this is was what went on, let's say, in a jail and further in some normal prosecutorial ends. And so then they look at the cases, look at, well, how is the person treated? If the person was treated beyond that, then there was no valid prosecutorial goal in mind. So therefore, it had to be of a political nature. I mean, you know, I mean, the case law, the case law, I mean, the case law is that clearly torture is not when they win in torture in Rodriguez. Yeah, I mean, Rodriguez's political opinion when you're in the middle of a war. I don't know the answer to that. Right. I mean, I mean, there's everybody who, as mentioned in Rodriguez, Mahano and all that in cases like that, when you're going into combat, I mean, there's always going to be the risks that of harms that combatants have, you know, I mean, we have I mean, we have like the torture in the cat cases. I mean, you don't even have to show political opinion, you just have to show torture. So even if it wasn't on account of anything, that's not even a requirement. And yet someone can meet something under the Convention Against Torture. So, you know, it's not it's not clear on that. In addition to the fact that, you know, I mean, Mr. Unheld didn't really come into this as as an ideologue. I mean, he I mean, as he himself said, even in the sworn statements, and we're not making an issue of the duress, but he said that he was forcibly conscripted. And and and then when they asked him, like, well, you know, whether or not he favored something to the effect of whether or not he favored guerrillas or the government, he said, you know, sometimes government, sometimes guerrillas. This is not and and and he also said that if I if I disobeyed, I'd be punished for it. So this is this is a guy who was he didn't really necessarily have the intent to overcome a particular characteristic of the guerrillas that he was handing over. And anyway, I'm going to see I have like 240 by two something. So I'm going to Good morning, Your Honors. May it please the Court. I'm Lyle Gentzler. I represent the Respondent Attorney General today. There's only one issue. I don't know the answer to my question. Just just we get it off the table. I mean, if there's a war going on, and and I gather there were actual battles here and so on. And then he goes and he and he takes people who are essentially, quote, the enemy. And he takes him to this person and they're tortured. Is that persecution on account of political opinion? Not by him, but in general? It is, Your Honor. We start off with the Geneva Convention, Article 17. This is not a normal. And I cited that for Your Honor in the 28J letter. This is not a normal military operation. Clearly, you capture people, you bring them into the MI, the military intelligence, they interrogate them, but they are not allowed to torture them. This court in a case called Nuru. I know that. But I just wondering as a matter of is there any case law as under the INA saying that that kind of torture is not just torture, but it's torture on account of political opinion? No, I don't think so. But what we have is we agree it was torture. Someone's cutting their hands off. I don't think there's any dispute about that. Then the question becomes, is that on account of a political opinion? That's what I'm asking you. And in this case, especially that was waived. The petitioner in his brief, I'm sorry, in his brief to the board, never brought this up. So it's an interesting question, but it's not in this case. That is correct. Now, this court has also, in the Miranda Alvarado, has stated that when you persecute or you torture guerrillas solely because they are guerrillas, not because they've committed a crime, and that would be maybe the Kusam type, not Kusam, the Kumar case, excuse me, Your Honor. But solely because they're guerrillas. That is on account of their political opinion. That would be Miranda Alvarado at 930. The only reason to go after these people was their political opinion, that they were guerrillas. Well, and the guerrillas were waging a war against the government, and they were trying to stop the people who were waging this war. Yes, but the reason the guerrillas were waging the war was purely political opinion. They want to overthrow the government. At any rate, and Judge Davis, you alluded to this in your first question to Mr. Davis, this is a case of burdens of proof. And we believe that there's a little confusion here as to what the burden is. The regulation 1240.8D states that if the evidence indicates that a bar to, excuse me, Your Honor, a bar to relief may exist, then the petitioner has the burden to prove by a preponderance of the evidence that it does not exist. When we talk about the sworn statements and the timing of the sworn statements, when we talk about was this based on the guerrillas' political opinion, that burden is on the petitioner. The evidence through those two sworn statements indicated, one, that he only arrested guerrillas, two, that he turned them over to his superior, Sub-Lieutenant Navarro, and that he knew that Sub-Lieutenant Navarro was torturing them by cutting off their hands, mutilating their hands. Now, Mr. Davis has said, well, there's no indications to the timeframe, but that was never the government's burden. Once those two sworn statements came in, and once he had notice of them, he had the burden of showing I didn't have this scienter, this knowledge. And we do acknowledge, Your Honor, Judge Berzon, that this court has not yet addressed in a formal opinion the scienter requirement. But the bottom line here is, once those two statements came in, the I.J. read them, and he found that he had the requisite knowledge at the time that he was turning over to Navarro. He then... What scienter requirement are you talking about? Could you repeat? You said we haven't addressed the scienter requirement. What scienter requirement do you mean? That the petitioner knew contemporaneously... Right. ...when he was turning these people over that they were being tortured. Now, the First Circuit... What you're saying is we don't have an opinion saying that... That is correct, Your Honor. ...that if you arrest somebody and... Yes, Your Honor. ...know that they're being turned over for purposes of torture. This court has not directly addressed that. But there are cases almost exactly like this... ...in the Second Circuit in Gao. They have addressed that issue. We have some prison guard cases where we say that's not sufficient some of the time. Right. But in the prison guard cases, there's a slight difference because some of them, as in Kumar, he's in a slightly different position. He was a Punjabi constable. Well, he was a prison guard in an ordinary Plano prison. That's right. And ordinary prisons serve, in many cases, an ordinary prison function, a legitimate function. And it's not enough to say someone like that. We were prison guard and sometimes torture occurred there. Or in some Sikh prisons, Indian prisons, torture occurred. But that's not what we have here. What we have here is something much more similar to the Singh case, Harpal Singh out of the Seventh Circuit... ...where he knew what was going on. And yet he delivered the prisoners to his superior, Sub-Lieutenant Navarro, knowing that Navarro was torturing them. That's the nexus. That's the personal involvement. And that's materially supporting the persecution. That's the situation we have here. Now, because... Let me take a step back. Had Mr. Anhel contested his two sworn statements and actually said, I did make those statements, but you've misconstrued them. I never had that knowledge. That would be a different issue. Then it's up to the IJ to determine if he's credible or not. But he never said that. He actually denied ever making the statements. And at various points, he said, well, I committed these acts because I was under duress. That was in his brief to the board. He was all over the place. And the IJ did not believe him. Once we have that adverse credibility finding, that just has to be supported by substantial evidence. Flipping it around, the record would have to compel the conclusion that the IJ erred... when he made that adverse credibility finding. We don't have that kind of evidence in this case. The burden was on the petitioner at all times to prove he was eligible for the relief that he was requesting. And he did not meet that burden. I have a lot of time left, but I believe that we've covered everything. I don't know that I need to belabor the point. My only other point I would make is that the only issue here before the court is the Nicara relief. Petitioner categorically waived his CAT claim, his asylum claim, and his withholding claim. So those are not before the board whatsoever. Subject to your questions as to my argument or the government brief, I would conclude by saying that this court should affirm the Board of Immigration Appeals' decision. Thank you very much. Thank you, Your Honor. Have a good day. So what about the representation that this kind of interesting issue wasn't actually raised? I'm sorry? What about the representation that the interesting issue, what I think is the interesting issue, wasn't actually raised before the board or really before us? I mean, you've been arguing that he didn't have the scienter, but are you also arguing that whoever did the torture was not torturing them on account of political? Actually, with regard to the, I know that Mr. Jentzer raised the issue of whether I exhausted the issue on political opinion. And I did respond to that. Well, it's not the issue. That's what I'm trying to find out. The issue you're arguing now, he isn't saying that you didn't raise. That is, whether your client himself, Mr. Othell, had this purpose or intent. That's what I understand you to be arguing, right? But what I want to know is, assuming that he didn't need to, and I don't think he did need to, because the question is what was the torture based on, not what was in his mind, was the torture based on political opinion? Well, that actually is not clear in the record. I know that. Was the issue raised before the board or in your brief? Well, okay. The issue in the appellate brief before the board, it doesn't seem that it was. However, and this is what I responded to in my response to the 28J letter. I said that basically the board adopted the IJ's reasoning on the issue. And at the administrative record at page 5, it says, in that paragraph the board states that the record indicates that the persecutor bar applies, that the burden shifted to the petitioner to show by the proponents of the evidence that it does not. The board then stated that Unhels failed to show that the grill, as he turned over to his superiors, were able to avoid torture. Based on that, the board stated that it agreed with the judge that the petitioner did not meet the burden of overcoming the persecutor bar, and then cites to a page in the judge's decision, which was 36 to 38 or administrative record 187 to 89, and those pages specifically talk about the on account of. And that's why I cited Kwong versus Holder for the proposition that the policy concerns behind the exhaustion are satisfied when the BIA expressly adopts the IJ's decision on that point. So that's where I get off saying that. That's helpful. I know your position on that. Thank you. Again, the whole thing with, you know, Mr. Gentry talks about the adverse credibility, but, again, we're doing this based on, you know, what's in the sworn statements, because that is what the judge found to be credible. And then when other things with regard to the burden, the burden is on the government to make the, I cited to in my reply a matter of AGG, and then the Sixth Circuit, the Sixth Circuit in Diazanada is at 457, and that area is saying that, you know, that it's the government that has to show the nexus between the person's action and the persecution and the whole issue of scienter on page 458 in that area. And just one thing, just before I close. Am I done? Please wrap up. Okay. You may finish your sentence. Okay. Is that, you know, we have a situation here in the 1980s where the United States government was supporting these governments, and, you know, people like Angel were grunts, were ground soldiers. And so now, you know, 25 to 30 years later, we're going after the grunts. I think that that's a little bit of a, I don't know, that's a little disconcerting. Anyway, thank you, Your Honors. Thank you. Have a good day. Thank you both. The case of Angel v. Lynch is submitted, and we will go to.
judges: Berzon, Owens, Davis